IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DOROTHY WORKS**,                                                   Civil Case No. 09-1434-KI

                        Plaintiff,

                                                                    OPINION AND ORDER

        vs.

**COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION**,

                        Defendant.


        Rory Joseph Linerud
        Linerud Law Firm
        P.O. Box 1105
        Salem, Oregon  97308-1105

                Attorney for Plaintiff

        Dwight C. Holton
        United States Attorney
        District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204

David J. Burdett
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Dorothy Works brings this action pursuant to Section 205(g) of the Social Security Act

("the Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying her application for Disability

Insurance benefits ("DIB") under Title II of the Social Security Act.

## PROCEDURAL BACKGROUND

Ms. Works filed an application for DIB on June 28, 2004.  The claim was denied initially

and upon reconsideration.  Ms. Works requested a hearing, which was held before administrative

law judge ("ALJ") Marilyn Maurer on June 28, 2006 ("the 2006 hearing").  The ALJ issued a

decision on March 15, 2007, finding Ms. Works not disabled.  When the Appeals Council denied

a request for review, the ALJ's decision became the final decision of the Commissioner.  Ms.

Works appealed to the United States District Court, and by order dated May 12, 2008, the case

was reversed and remanded for further administrative proceedings.  The ALJ was ordered to: 1)

evaluate Ms. Works's obesity; 2) evaluate her mental impairments by providing specific findings

and an appropriate rationale for each of the functional areas described in 20 C.F.R. § 404.1520a (c); and 3) evaluate Ms. Works's allegations of limited reading and writing ability.  Tr. 393-94.

After a second hearing on March 9, 2009 ("the 2009 hearing"), ALJ Mauer issued another decision, dated August 17, 2009, finding Ms. Works not disabled.

Ms. Works was born in 1964, and was 45 years old at the time of the ALJ's decision.  Her date last insured is December 31, 2008.  She alleges disability beginning December 2003, based on reading and writing deficiencies; musculoskeletal complaints of the back, buttock, arms, wrists, legs and knees; bilateral carpal tunnel syndrome; degenerative disc disease; dizziness; fibromyalgia; depression; and obesity. She has not engaged in substantial gainful activity since December 2003.  She left school in the ninth grade.  Her past relevant work is as a waitress.

## THE SEQUENTIAL EVALUATION

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At step one, the Commissioner determines whether the claimant has engaged in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, the Commissioner goes to step two, to determine whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  That determination is governed by the "severity regulation," which provides:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

§§ 404.1520(c), 416.920(c).  If the impairment is severe, the evaluation proceeds to the third step, where the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41.  If a claimant's impairment meets or equals one of the listed impairments, she is considered disabled without consideration of her age, education or work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the impairment is considered severe, but does not meet or equal a listed impairment, the Commissioner considers, at step four, whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant shows an inability to perform her past work, the burden shifts to the Commissioner to show, in step five, that the claimant has the residual functional capacity ("RFC") to do other work in consideration of the claimant's age, education and past work experience.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).

## MEDICAL EVIDENCE

The parties accept the ALJ's summary of the medical evidence except as discussed below.

## HEARING TESTIMONY

At the 2009 hearing, Ms. Works testified that she was 5'3" and weighed 200 pounds.  She stated that except for pain and neuropathy in her arms, her physical and mental impairments were unchanged since the 2006 hearing.  The ALJ called vocational expert ("VE") Mark McGowan, the same VE who had testified at the 2006 hearing.  The ALJ asked the VE to consider a hypothetical individual of Ms. Works's age and previous work experience, with unlimited ability

to sit and stand, but unable to walk for more than 30 minutes at a time, up to a total of 2.64 hours

per day; unable to reach overhead with the left arm; and limited to "tasks no more complex than

one to three steps in which the ability to read and write is not an essential component of the job."

Tr. 469.

The VE opined that such an individual could not return to her past work as a waitress, but

that she could perform the jobs of small products assembler, Dictionary of Occupational Titles

("DOT") [1] Code 706.684-022; photocopy machine operator, DOT Code 207.685-014; and hand

packager, DOT Code 920.587-018.  As will be discussed below, the ALJ rejected the VE's step

five testimony in favor of the testimony the VE had provided at the 2006 hearing.

## ALJ'S DECISION

The ALJ found that Ms. Works had the following severe impairments: chronic low back

pain secondary to degenerative joint disease, left shoulder tendinitis, myofascial pain syndrome,

and major depression.  The ALJ concluded that because Ms. Works had "failed to show she

experiences symptoms of obesity or difficulty reading and writing that have more than a minimal

---

[1]The Dictionary of Occupational Titles ("DOT") is a publication of the United States
Department of Labor that gives detailed requirements for a variety of jobs.  The Social Security
Administration has taken administrative notice of the DOT.  Massachi v. Astrue, 486 F.3d 1149,
1153 n. 8 (9th Cir. 2007); see also  See United States Department of Labor, DOT (4th ed. 1991),
available at http://www.occupationalinfo.org.  The Social Security Administration relies
"primarily on the DOT" for "information about the requirements of work in the national
economy" at steps four and five of the sequential evaluation process.  Social Security Ruling
("SSR") 00-4P, 2000 WL 1898704, *2 (S.S.A.) (Use of vocational experts and occupational
information in disability decisions).  For purposes of determining whether a claimant can
perform gainful activity, the Commissioner may rely on the general job characteristics of the
DOT as presumptively applicable to the claimant's prior work, but the claimant may overcome
the presumption that the entry for a given job title applies to her by demonstrating that the duties
in her particular line of work were not as described.  See, e.g.,  Villa v. Heckler, 797 F.2d 794 (9th
Cir. 1986).

effect on her ability to perform basic work activity," these were not severe impairments.  Tr. 577.

The conclusion was based on findings that Ms. Works had offered no testimony about the impact

of her weight on any other physical condition or ability to function, and that her body mass index

("BMI") was 35.4, based on her height and weight, which was "obese, but not morbidly so."  Tr.

578.  The ALJ concluded that the restriction to sedentary exertion accommodated any stress her

obesity might place on her back and joints.[2]

        The ALJ acknowledged Ms. Works's testimony at the 2006 hearing that she had

difficulties with reading and writing, and that she had been enrolled in special education courses

in school.  The ALJ found that she had a  "marginal education," tr. 381, but that her past work as

a waitress, according to the testimony of the VE, had required the ability to read.  The ALJ also

took note of "extensive handwritten information" submitted by Ms. Works, demonstrating

"excellent handwriting, grammar and spelling, including correct spelling of such commonly

misspelled words as vacuum," tr. 578,[3] and Ms. Works's report to a psychologist that she did

─────────────────────

        [2] As noted below, at the 2009 hearing, the ALJ asked the VE to consider an individual
able to do work in the light to medium range, and the VE provided answers responsive to that
hypothetical.  However, by the time the ALJ wrote her 2009 decision, she had discarded some
parts, but not all, of the hypothetical, and all of the VE's step five testimony, instead relying on
the sedentary aspects of the hypothetical question asked in 2006 and the VE's 2006 step five
testimony.

        [3] However, the handwriting on that document, including the word "vacuum," tr. 123-129,
does not match the Ms. Works's signature.  Compare tr. 127 to tr. 129, 449 (signatures).  Other
handwritten documents, where the handwriting matches Ms. Works's signature, show "vacuum"
misspelled as "vacum," (tr. 133), as well as consistent misspellings, including "headachs,"
"causeing," "moveing," "dealiver," "stife" [stiff], "ful" [full], "volinteer"  "exray," "stairoids,"
"neurosurgan," and "neurologest."  Tr. 414, 415, 130-34.  Ms. Works's testimony at the 2006
hearing included such grammatical errors as "I couldn't do it no more," tr. 351; "it don't matter,"
tr. 353; and "lay down" for "lie down," tr. 361.

crossword puzzles to keep her mind active.  Accordingly, the ALJ found Ms. Works's allegations of problems with reading and writing not credible.

The ALJ rejected the physical capacities evaluation by a Social Security examiner on February 2009, which had concluded that Ms. Works had the ability to do work in the light to medium exertion range.  Instead, the ALJ adhered to the physical capacities findings the ALJ made in the 2006 decision, in which Ms. Works had the RFC to perform sedentary work except for an inability to do overhead reaching with her left arm.  With respect to nonexertional impairments, the ALJ  found, "Due to the effects of pain, pain medication, and depression, she is limited to performing simple one to three step tasks."  Tr. 379.  Despite having rejected Ms. Works's allegations about difficulty reading and writing, the ALJ further limited Ms. Works's RFC to work in which the ability to read and write was not an essential component of the job. The ALJ concluded that Ms. Works was unable to return to her previous work.

At step five of the sequential evaluation, the ALJ relied upon the VE's testimony at the 2006 hearing, identifying three sedentary jobs: touch up screener, semiconductor assembler, and information clerk.  On the basis of these representative jobs, the ALJ concluded that Ms. Works was able to do other work in the national economy.

### STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden of proving disability rests on the claimant.  Meanel, 172 F.3d at 1113. To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment" which  "has lasted or can be expected to last for a continuous

period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  42 U.S.C. § 423(d)(3).

### DISCUSSION

1.    <u>Errors at step five of the sequential analysis</u>

Ms. Works asserts that the ALJ erred by 1) failing to evaluate properly the vocational

effect of Ms. Works's reading and writing limitations, and 2) identifying other work that Ms.

Works could perform whose requirements were inconsistent with the ALJ's RFC.

The ALJ's evaluation of whether Ms. Works is impaired by reading and writing

limitations is difficult to review because it is internally inconsistent.  On the one hand, the ALJ

found that Ms. Works' allegations of difficulty reading and writing were not credible because

they were inconsistent with the  "extensive handwritten documentation" showing  "excellent

handwriting, grammar and spelling," including the ability to spell "vacuum," and her report of

doing crosswords.  On the other hand, the ALJ found that Ms. Works had a "marginal" education

and, in the hypothetical to the VE, specified that Ms. Works was limited to jobs not requiring the

ability to read and write.  I conclude that because the ALJ included in her hypothetical to the VE

both a limitation to simple tasks and jobs not requiring the ability to read or write, the ALJ

properly evaluated the vocational effect of Ms. Works's allegations of difficulty reading and

writing by adding this limitation to the hypothetical question posed to the VE.

However, I agree with Ms. Works's second argument, that the ALJ erred at step five because the jobs identified to support the step finding that Ms. Works could do other work were inconsistent with the RFC findings.  The fundamental error of the ALJ's step five analysis is that the ALJ's RFC findings in 2009, as reflected in the hypothetical posed to the VE, are not the same RFC findings contained in the hypothetical the ALJ gave the VE in 2006.  Consequently, the VE's 2006 testimony about jobs Ms. Works could do–upon which the ALJ relied in her 2009 decision–is not responsive to the ALJ's 2009 RFC findings, but rather to different RFC findings made in 2006.

In 2006, the ALJ asked the VE to consider an individual with the RFC to lift 10 pounds occasionally and less than 10 pounds frequently; stand and walk for at least two out of eight hours; and sit for six out of eight hours, with a sit/stand option at will for pain.  These exertional requirements fall within the definition of sedentary work.  See 20 C.F.R. § 404.1567(a).  The ALJ asked the VE to consider as additional limitations an inability to reach overhead with the left arm and the capacity to perform "only simple, repetitive tasks of one to three steps."  Tr. 366. The VE identified three sedentary jobs within these limitations.

In 2009, the ALJ asked the VE to consider an individual with an unlimited ability to sit; an unlimited ability to stand; and the ability to walk for up to 30 minutes at a time, up to 2.64 hours per day.  The ALJ described this as amounting to "a light to medium exertion range of activity."  Tr. 380.  The ALJ asked the VE to consider as additional limitations an inability to reach overhead with the left arm, and the capacity to perform "tasks no more complex than one to three steps in which the ability to read and write is not an essential component of the job."  Tr. 469.

Page 9 - OPINION AND ORDER

In her decision, the ALJ concluded that Ms. Works could do only sedentary work, disclaiming the "light to medium" exertion level contained in her hypothetical to the VE at the 2009 hearing, and rejecting the 2009 physical capacities evaluation, performed by a Social Security examiner, concluding that Ms. Works could do light work.[4]

Having decided to adhere to the RFC involving sedentary work, the ALJ relied on the three sedentary jobs identified by the VE at the 2006 hearing to support the step five finding of other jobs in the national economy that Ms. Works could do. The ALJ's error lies in the fact that the hypotheticals to the VE in 2006 and 2009 were different, not only in the exertional requirements, but in nonexertional aspects, the ALJ having told the VE to consider not only an individual capable of tasks involving no more than one to three steps, but *also jobs not requiring the ability to read and write.*

A VE's testimony has no evidentiary value to support a finding that a claimant can perform jobs in the national economy unless the hypothetical given to the VE by the ALJ reflects all of the claimant's limitations. See, e.g., Matthews, 10 F.3d at 681. The 2009 hypothetical included a limitation to jobs not requiring the ability to read and write. The 2006 hypothetical did not. Thus, the VE's testimony does not reflect all the limitations found by the ALJ, and does not constitute competent evidence to support the ALJ's finding at step five that Ms. Works could perform other jobs. The error is readily apparent when the three jobs identified by the VE in 2006 are considered in light of the RFC findings of 2009.

---

[4]Light work is defined as involving a "good deal of walking or standing." 20 C.F.R. § 404.1567(b). However, light work also requires the ability to "sit[] most of the time with some pushing and pulling of arm or leg controls," id., which would probably be ruled out in Ms. Works's case by the RFC restriction on overhead work with the left arm.

The three jobs identified by the VE in 2006 were described as sedentary, unskilled, and having a Specific Vocational Preparation ("SVP") of 2.  Tr. 367-68.  "SVP" is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  DOT Appendix C II.  A job with an SVP of 2 is one that can be learned in a month or less.  Id.

The SVP level in a DOT listing indicating unskilled work does not address the question of whether whether a job entails only simple tasks.  See Rose v. Astrue, 2010 WL 3584561 (W. D. Wash. August 11, 2010) *4.  The issue of a job's simplicity appears to be more directly addressed by the DOT's General Educational Development ("GED") ratings.  Id. Thus, the ALJ's limitation of "one to three steps in which the ability to read and write is not an essential component" is not defined by, or even necessarily consistent with, an SVP of 2.

Although the Social Security regulations contain only two categories of ability in regard to understanding and remembering instructions ("short and simple" or "detailed or complex"), the DOT has six gradations within the GED category for measuring the ability to understand and remember.  Xiong v. Commissioner, 2010 WL 2902508 (E. D. Cal. July 22, 2010) *6, citing Meissl v. Barnhart, 403 F. Supp.2d 981, 984 (C.D. Cal. 2005).  See DOT, Appendix C III.  The GED category is broken down into three divisions: reasoning development ("R"), mathematical development ("M"), and language development ("L").

The ALJ's RFC limitation of "one to three steps" falls within DOT's GED 1 and 2,[5] which encompass the ability to perform simple, routine work tasks. Meissl, 403 F. Supp.2d at 984 and Xiong at *6 (collecting district court cases within the Ninth Circuit). I am persuaded by these cases that the ALJ's RFC limitation to "one to three steps" should be interpreted as reflecting DOT's GED levels 1 and 2.[6]

According to the DOT, the GED levels for the job of touch up screener, DOT Code 726.684-110 are R2 and M1. For the job of semiconductor assembler, DOT Code 726.684-034,

---

[5] R1 requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." R2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." R3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." R4 requires the ability to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. (Examples of rational systems include: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation)."

M1 requires the ability to "[a]dd and subtract two digit numbers, multiply and divide 10s and 100s by 2, 3, 4 and 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint and quart; inch, foot and yard; and ounce and pound." M2 requires the ability to "[a]dd, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal fractions. Compute ratio, rate and percent. Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units." DOT Appendix C III.

[6] The underlying evidence also supports such a conclusion. The psychological evaluation by Dr. Prescott, accepted by the ALJ, states that Ms. Works's speech was "very slow, continuous and rather disorganized;" that she showed "impairment with concentration, being unable to spell 'world' backwards, count serial 7s from 100 or serial 3's from 20," and that she had difficulty adding a two-digit addition problems. She was not able to interpret either of two common proverbs and could not repeat word combinations such as "steam/fog" or "work/play." Dr. Prescott thought Ms. Works appeared to be of Low Average intellectual functioning. Tr. 419.

the GED levels are R3 and M2.  For the job of information clerk, DOT Code 237.367-022, the GED levels are R4 and M2.

The only job of the three identified by the VE in 2006 that is consistent with an RFC of one to three steps is that of touch up screener, with GED levels of R2 and M1.  But the job of touch up screener cannot meet the Commissioner's burden at step five because there is no evidence in the record that addresses the question of whether that job, which as described in the DOT involves maintaining records of defects and repairs of printed circuit board assemblies, is consistent with the ALJ's additional RFC limitation of a job in which the ability to read and write is not an essential component.  I therefore conclude that because of the ALJ's errors, the Commissioner has failed to meet his evidentiary burden at step five of the sequential analysis.

2. ALJ's rejection of Claimant's Testimony

The ALJ is responsible for determining credibility. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. Holohan v. Massinari, 246 F.3d 1195, 1208 (9th Cir. 2001).  Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's subjective testimony must be "clear and convincing." Id. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. Id. The evidence upon which the ALJ relies must be substantial. Id.

Ms. Works gave no symptom testimony at the 2009 hearing except to say that her symptoms were essentially unchanged from the 2006 hearing.  At the 2006 hearing, Ms. Works testified that she had pain in her neck, shoulders, wrists, knees, and lower back.  She testified that the pain in her back was a seven or eight on a 10-point scale without medication, and a five with

medication.  On a typical day, she got up, prepared her husband's lunch, "straighten[ed] up a little," and sat or napped until about 3:30 p.m., when she started dinner, ate, and did the dishes. Tr. 361.  She said she was able to sit for about half an hour at a time, walk for about an hour, and stand for 20 minutes.  She required help from her husband with dressing sometimes because of pain in her shoulders and back.

The ALJ rejected this testimony because it was "not supported by the medical evidence. Treating and examining sources noted that Ms. Works's complaints were out of proportion to the physical findings."  Tr. 380.   The ALJ also thought Ms. Works's testimony was inconsistent with her reported ability to walk one and a half to two miles a day.  The ALJ accepted the conclusion of Scott Fechtel, M.D., who had released Ms. Works to sedentary work as of July 2005.

General findings, such as "not supported by the medical evidence," are an insufficient basis to support an adverse credibility determination.  Holohan, 246 F.3d at 1208. If a claimant provides medical evidence establishing an objective basis for  an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony.  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1986).  If the medical evidence supports the *existence* of pain, the claimant is not required to submit medical evidence which supports the *degree* of pain.  Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991)(en banc).

The medical evidence here establishes underlying impairments that could cause pain, and the ALJ herself found that Ms. Works had the severe impairments of chronic low back pain secondary to degenerative joint disease, left shoulder tendinitis, myofascial pain syndrome, and

major depression–all conditions that cause pain.  The ALJ's credibility finding is based, not on the *existence* of pain, but on doubts about the *degree* of pain testified to by Ms. Works.  This was legal error.

The ALJ's rejection of Ms. Works's testimony on the ground that she was able to walk for a mile and a half to two hours is erroneous.  First, the ability to walk for a mile and a half to two miles is perfectly consistent with Ms. Works's testimony at the 2006 hearing that she was able to walk for an hour at a time.  Second, the ability to walk some distance is not inconsistent with disability. See, e.g., Vertigan v. Halter, 260 F.3d 1044 (9th Cir. 2001)(rejecting ALJ's credibility findings based on, among other things, claimant's ability, despite a back condition, to walk approximately one hour).  See also Corrao v. Shalala, 20 F.3d 943 (9th Cir. 1994)(activities that include taking care of oneself, hobbies, therapy and household tasks are not sufficient to disqualify a claimant from receiving disability benefits).  I conclude that the ALJ's reasons for rejecting Ms. Works's testimony are based on legal error and fail to meet the clear and convincing standard.

When a claimant's pain testimony has been improperly rejected by the ALJ, it should be accepted as true.  Varney v. Secretary, 859 F.2d 1396, 1398-99 (9th Cir. 1988).  In general, when the evidence is strongly in the claimant's favor and the equities are against further delay, the court should apply this prudential rule.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1986).

3.    Remand

Sentence four of 42 U.S.C. § 405(g) gives the court discretion to decide whether to remand for further proceedings or for an award of benefits.  Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).

In Smolen, 80 F.3d at 1292, the court held that improperly rejected evidence should be credited and an immediate award of benefits be made when: 1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, 2) there are no outstanding issues that must be resolved before a determination of disability can be made, and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

The three conditions are met here.  Accordingly, the court will not remand in order to permit the ALJ a third opportunity to make a proper credibility determination or correct the errors in the step five findings. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (court does not remand solely to allow the ALJ to make findings about pain testimony, but rather takes the relevant testimony to be established as true and remands for an award of benefits);  Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) (Commissioner not entitled to additional opportunity to show claimant not credible, any more than claimant, had she lost, would be entitled to an additional opportunity to establish her credibility).  The remand is for the payment of benefits.

## CONCLUSION

This case is reversed and remanded for the payment of benefits.

IT IS SO ORDERED.

Dated this _____31st_____ day of March, 2011.

\_\_\_/s/ Garr M. King_____
Garr M. King
United States District Judge

Page 16 - OPINION AND ORDER